**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
NORTHERN DIVISION
TOWER II, 9TH FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201-2705
TEL: (410) 962-3962
FAX: (410) 962-3976

JAMES WYDA
FEDERAL PUBLIC DEFENDER

SUMMER AKHTAR
ASSISTANT FEDERAL PUBLIC DEFENDER

December 2, 2025

Honorable Ellen L. Hollander
United States District Court
101 W. Lombard Street
Baltimore, MD 21201

    Re: *United States v. David Fulton*, Criminal No. ELH-25-035

Dear Judge Hollander:

    David Fulton respectfully submits this sentencing letter ahead of his scheduled sentencing on December 16, 2025. Mr. Fulton pled guilty to Count One of the Indictment, charging him with sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(a), (e), on October 16, 2025. Pursuant to the Rule 11(c)(1)(C) plea agreement, the parties stipulate that the appropriate sentence to satisfy the 18 U.S.C. § 3553(a) sentencing goals is 15 years' incarceration, followed by 20 years' supervised release.

    Mr. Fulton accepts full responsibility for this offense. At the time, Mr. Fulton was heavily self-medicating his mental health struggles with cocaine and opioids. Over the last 18 months incarcerated, Mr. Fulton has maintained sobriety for the first time since he was 12 years old. Now able to reflect on his actions with a clear mind, Mr. Fulton is ashamed of the choices he made, remorseful for the harm he caused, and embarrassed of the agony he has brought upon his family. His genuine contrition motivated his prompt decision to plead guilty.

    This Court is aware that when imposing a sentence, it must first consider the applicable sentencing guidelines. However, the guidelines are advisory and "not the only consideration;" they are merely a "starting point" for the Court's evaluation. *Gall v. United States*, 552 U.S. 38, 49 (2007). Ultimately, the Court must fashion a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Mr. Fulton agrees that the applicable guidelines range is 210 - 262 months' imprisonment. The parties ask this Court to impose a variant sentence of fifteen years, the mandatory minimum term of

incarceration for the conviction offense. 18 U.S.C. § 2251(e). Mr. Fulton makes no attempt to minimize the offense conduct in this case but provides the following information in support of the imposition of the agreed upon sentence under 18 U.S.C. § 3553(a).

I. **Mr. Fulton's history and characteristics support the imposition of a 15-year sentence.[1]**

Mr. Fulton's life has been defined by his father's suicide. Throughout his childhood, his grandmother and parents, Rita and David Sr.,[2] spent the weekends smoking crack cocaine in their Brooklyn, New York apartment. Every Saturday, their family would have dinner together. Afterwards, Mr. Fulton and his siblings were sent into a bedroom and instructed to watch a movie. In the living room, his parents smoked crack cocaine, sometimes with their friends. On one occasion, when Mr. Fulton was nine years old, Rita left the home to go the corner store. While she was away and the children watched a movie, David Sr. walked into the boys' bedroom, tied a belt to Mr. Fulton's bunk bed, and hung himself. Mr. Fulton's eldest brother, James, found his stepfather in the bedroom a few minutes later. When their mother arrived home, James was performing CPR, and the kids were crowded around their father's dead body.



*Mr. Fulton's parents*

---

[1] The following information was obtained through the PSR, interviews with Mr. Fulton, his oldest sister and former guardian, Tonisha Fulcher, and his eldest brother, James Gray.

[2] This memorandum refers to Mr. Fulton's mother, father, sister, and brother by their first name to avoid confusion arising from their shared surname. Mr. Fulton's father, David Sr., was stepfather to Mr. Fulton's eldest sister, Tonisha, and eldest brother, James.

2

The family was shocked. They knew their father was struggling with his mental health but did not know he was suicidal. In the few months preceding his suicide, David Sr. became paranoid. Mr. Fulton's eldest sister, Tonisha Fulcher, remembers her stepfather accusing strangers of hiding in closets. He was violent, frequently choking Rita when he was high. The kids began hiding the knives for fear of him hurting their mother. This was, in part, why the kids stayed in the "movie" bedroom while their parents smoked crack cocaine. It was Rita's attempt to protect her children.

After his father's suicide, Mr. Fulton's mother grew deeply depressed and family life became even more chaotic. David Sr.'s family blamed Rita for his suicide—they outright accused her of killing him. During David Sr.'s wake, they yelled profanities at Mr. Fulton's mother. The conflict became physical and violent. Gunshots went off, a family member was stabbed, and David Sr. was pushed out of his casket. Mr. Fulton witnessed all of this happen. For months after the wake, at only nine years old, Mr. Fulton did not speak to anyone in his family at all.

Rita grew deeply depressed after the wake. She attempted suicide several times by overdosing. She rarely left her bed, relying on her older children to care for the younger children. David Sr.'s suicide compounded tragedies from her own past; her struggles to care for her children echoed her own neglect as a child. When Rita was a teenager, her mother (Mr. Fulton's grandmother) was set on fire by her husband. Subsequently, she experienced a mental break and could no longer care for her children. Rita was sent to a group home, where she remained until she was eighteen years old. After she aged out of the group home, she lived in and out of shelters, including with Mr. Fulton when he was a baby.

David Sr. was the breadwinner in their family. After his death, drug dealers pursued Rita for failing to repay them for borrowed crack cocaine. Without her husband's earnings, she could no longer afford her drug habit. She tried to feed her addiction with the money her sons earned as baggers at the local grocery store, but it was not enough. Instead of finding a job, she relocated the family out of their neighborhood. They moved out of their Brooklyn apartment into public housing in Queens.

With little guidance at home, at the age of 12, Mr. Fulton began using marijuana. He started acting out in school. During a fight, Mr. Fulton was arrested and served a period in juvenile detention. When he was released, his older sister, Tonisha, decided to take matters into her own hands. Almost ten years older than Mr. Fulton, she took her brother into her home in Pennsylvania. She sought and obtained guardianship, understanding that until their mother achieved sobriety, she could not parent Mr. Fulton.

Initially, Mr. Fulton thrived at his sister's house; Tonisha made earnest efforts to parent Mr. Fulton. Unfortunately, Mr. Fulton began hanging out with people who used drugs. He was introduced to ecstasy, painkillers, and MDMA at 16-years-old. Within the next few years, Mr. Fulton moved back in with their mother. His mother was living in a shelter in Virginia and needed help getting back on her feet. Mr. Fulton stayed with his mother until she found stable housing, and then returned to Tonisha's home. Soon after his return, at the age of 20, Mr. Fulton was introduced to cocaine.[3]

Mr. Fulton continued using cocaine daily for the next decade, until his arrest in this case. For many years, Mr. Fulton has needed professional mental health intervention to help him address destabilizing childhood experiences and drug addiction. He participated in inpatient drug treatment at the Naaman Center in Elizabethtown, Pennsylvania in 2022, but left after 107 days of sobriety.[4] His addiction consumed him, limiting his ability to maintain consistent work. His mental health struggles came to a head with his offense in this case.

Mr. Fulton's parents' addiction and mental health challenges, culminating in the father's suicide, and related neglect of their children is the basis for Mr. Fulton's complex trauma. These types of experiences, particularly during formative childhood years, affects healthy brain development, leading to dysregulation of emotional and social processing and increasing vulnerability to mental health disorders such as depression, anxiety, and PTSD. Rajshree Pandey, *Impact of Child Abuse and Neglect on Mental Health of Children*, 6 J. Acad. Med. & Prac. 1108, 1108–1113 (2023), https://academicmed.org/Uploads/Volume6Issue3/226.%20[3435.%20JAMP_Rajshree]%201108-1113.pdf; Miriam Steele et al., *Intergenerational Transmission of Maltreatment and Major Psychiatric Disorders: A Study of Adolescents and Their Parents*, 5 J. Child & Fam. Stud. 409, 409–421 (2016), https://pmc.ncbi.nlm.nih.gov/articles/PMC4712184/pdf/40345_2015_Article_42.pdf; McLean Hospital, *The Effects of Childhood Abuse on the Brain and Mental Health*, https://www.mcleanhospital.org/essential/effects-child-abuse (last visited July 22, 2025). Indeed, Mr. Fulton has been diagnosed with depression, anxiety, and bipolar disorder. PSR ¶ 63. Mr. Fulton's conduct in this case should be evaluated through this lens.

---

[3] Mr. Fulton continues to experience family tragedy. Just a few weeks after Mr. Fulton's arrest in this case, James was in a scooter accident and suffered a traumatic brain injury. He had a brain bleed, a concussion that lasted four months, and reconstructive surgery of his left eye socket. He now suffers from epilepsy and memory loss.

[4] Undersigned counsel confirmed this information with records from the Naaman Center.

There of course can never be an excuse or justification for any conduct harming a child. Mr. Fulton fully realizes this and does not suggest that his complex history *caused* him to commit a sexual offense against minors. He knows that he has a lot of painful personal and family history to work through and is committed to addressing his offense conduct and all contributing factors.

II. **A sentence of 15 years accounts for the nature and circumstances of the offense.**

During a trip with his family members, Mr. Fulton took a single picture of Jane Doe's genitals. He did not have sexual contact with Jane Doe. The photograph was discovered during an independent execution of a search warrant for possession of child pornography. Mr. Fulton did not distribute or share the photograph he took. Even so, Mr. Fulton's conduct in this case is deeply disturbing. He recognizes that he was entrusted to care for Jane Doe during this vacation, and grossly betrayed her and her family's trust.

During the time of the offense conduct, including when he was arrested, Mr. Fulton was heavily under the influence of cocaine. His addiction does not justify his actions but does provide context for this Court to consider under 18 U.S.C. § 3553(a). Having now remained sober for the longest period of time since he was a child, Mr. Fulton is genuinely regretful of his conduct.

Given these circumstances, a sentence of fifteen years, followed by a twenty-year term of supervised release, is sufficient but not greater than necessary to achieve federal sentencing goals.

III. **A sentence of 15 years accomplishes goals of specific and general deterrence.**

Mr. Fulton has minimal criminal history. He has no prior convictions involving minors; each of his prior convictions are misdemeanors or summary offenses motivated by drug use. He has never served more than three months incarcerated. For someone like Mr. Fulton, a sentence of fifteen years is a specific deterrent. While incarcerated in the Bureau of Prisons, he will have the opportunity to participate in treatment programs that are specifically designed for sex offenders.

Mr. Fulton will also be subject to a twenty-year term of supervised release. While he is on supervised release, he will be subject to strict conditions of supervision specifically tailored to sex offenses, including sex-offender treatment. These conditions will serve as an additional specific deterrent.

The agreed upon sentence also serves as a general deterrent. Mr. Fulton was 30 years old at the time of his arrest; by the time he is released, he will be almost 45.

He will be removed from the community and his children's lives for over a decade. His wife reports his children, who suffer from ADHD and autism, are already struggling with Mr. Fulton's absence. Mr. Fulton will have to start over while he is registered as a sex offender. He will be subject to computer monitoring and his interactions with children will be limited. That is a serious social consequence of his actions that sends a strong deterrent message to the community.

Furthermore, there is no evidence that a sentence longer than 15 years provides a meaningful deterrent effect to the public or added public safety. The Department of Justice's National Institute of Justice has issued its own guidance reflecting that "[i]ncreasing the severity of punishment does little to deter crime" and "[t]he certainty of being caught is vastly more powerful deterrent than the punishment." *See* U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, *Five Things About Deterrence* 1-2 (May 2016). For someone like Mr. Fulton, a first-time sex offender, with minimal criminal history, 15 years is a serious sentence.

Mr. Fulton will feel the lasting effects of his disturbing conduct in this case for the remainder of his life. Even Mr. Fulton's family is shocked and devastated by his behavior. He has not been known to be, nor is there any evidence of him being, inappropriate with his own children or his nieces and nephews. His family remains supportive of Mr. Fulton and will continue to hold him accountable. Indeed, informed by their parents' neglect, Mr. Fulton and his siblings have a family mantra: "leave no one behind."



*Mr. Fulton, left, pictured with his siblings*

**Conclusion**

For the reasons stated above, Mr. Fulton asks the Court to sentence him to the parties agreed-upon disposition of 15-years' incarceration, to be followed by a 20-year term of supervised release. He also requests that the Court credit him time served, between May 31, 2024 and March 4, 2025, the time Mr. Fulton served on the related state child pornography case, filed in the Court of Common Pleas in Dauphin County, Pennsylvania at CP-22-CR-0002789-2024, that is to be dismissed upon conviction in this case, and from March 5, 2025, the date Mr. Fulton fell to his federal detainer. Mr. Fulton also notes his objections to the Draft PSR in a separate filing. The draft PSR was submitted on December 1, 2025. Counsel has not had the opportunity to review the draft with Mr. Fulton before this memorandum is due on December 2, 2025. Counsel respectfully requests the ability to request additional modifications to the Draft PSR after consulting with Mr. Fulton.

        Respectfully submitted,

        JAMES WYDA
        Federal Public Defender

        _____/s/_____
        SUMMER AKHTAR
        Assistant Federal Public Defender